UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GARY LEE PANSIER,

        Plaintiff,

v.                                           Case No. 13-C-183

UNITED STATES OF AMERICA, et al.

        Defendants.

**ORDER DENYING MOTION TO AMEND COMPLAINT AND
GRANTING MOTION TO DISMISS**

In this action, Plaintiff seeks civil damages for the government's failure to release a lien (26 U.S.C. § 7432) and for certain collection actions Plaintiff alleges were unauthorized (26 U.S.C. § 7433). The Plaintiff's claims arise largely out of the IRS' issuance of a Notice of Federal Tax Lien ("NFTL") and the serving of a levy of $4,046.27 from Plaintiff's pension, both of which occurred in 2008. The government has moved to dismiss on the grounds that the two-year statute of limitations has run on Plaintiff's ability to seek redress for the government's allegedly unlawful actions.[1]

In response to the motion to dismiss, Plaintiff filed a motion to amend the complaint. In the original complaint, Plaintiff asserted that although the claims appear untimely, the court should allow equitable tolling because "through no fault of his own," he was forced to declare bankruptcy

---

[1] The Plaintiff's tax history is recounted elsewhere, for example, in *United States v. Pansier*, 576 F.3d 726 (7th Cir. 2009).

and was serving probation during some of the statute of limitations period. (Compl. ¶ 101, 102.) In addition, the complaint states that the lengthy administrative process Plaintiff undertook with the IRS prevented him from learning about the true nature of the IRS' actions until 2012. (*Id.* ¶ 100, 104.) The proposed amended complaint adds the argument that Plaintiff's claims are timely because the government has been involved in a continuous series of violations, a fact which Plaintiff believes should toll the otherwise-expired statute of limitations. In particular, Plaintiff alleges that it was not until May 2, 2013 that he learned the IRS had recently filed a Revocation of Certificate of Release of Federal Tax lien, which served to reinstate the previous lien. In Plaintiff's view, this additional unauthorized collection activity shows that the government is involved in an ongoing and continuous violation of Plaintiff's rights.

Before addressing the tolling and continuing violation arguments, I will address Plaintiff's suggestion that the claims were actually timely in their own right.[2] Sections 7432 and 7433 waive the government's sovereign immunity to suit, provided that any action is "brought only within 2 years after the date the right of action accrues." 26 U.S.C. § 7432(d)(3); 26 U.S.C. § 7433(d)(3). Accrual under this provision occurs when the taxpayer has "had a reasonable opportunity to discover all essential elements of a possible cause of action." Treas. Reg. § 301.7432–1(i). In some places it appears that Plaintiff is arguing that his claims are timely in their own right because he could not have discovered all the elements of a possible cause of action until recently. For example, he asserts that he "could not determine whether the June 5, 2008 Final Notice of Intent to Levy, the June 6, 2008 Notice of Federal Tax Lien, or the August 26, 2008 Notice of Levy were unauthorized

---

[2] It is unclear whether Plaintiff is actually arguing the claims were timely because the suggestion of timeliness is intermingled with arguments for equitable tolling.

2

because he never received them." (Compl., ¶ 89.) But the complaint admits that Plaintiff knew about the tax levy in 2008 when his pension company informed him about it and when he failed to receive his pension check. (Compl., ¶ 8.) Moreover, in December 2008 the government filed a motion in Plaintiff's bankruptcy case, and at that time the NFTL would have been known to Plaintiff. At a minimum, the complaint itself acknowledges Plaintiff's own attempt to have the NFTL withdrawn in 2009. (Compl. ¶ 25.) Thus, given that he was already attempting to have the government's actions undone as early as 2009, it is clear that the Plaintiff knew about the levy and the NFTL more than two years prior to filing this lawsuit in 2013.

In recognition of the fact that the claims are untimely, the bulk of Plaintiff's argument relies on a combination of equitable tolling and the continuing violations doctrine. Equitable tolling theories may apply when (1) the defendant has actively misled the plaintiff, (2) the plaintiff has in some extraordinary way been prevented from asserting his rights, or (3) the plaintiff has timely asserted his rights mistakenly in the wrong forum. *United States v. Midgley,* 142 F.3d 174, 179 (3d Cir. 1998). "In suits against the government, one must also establish affirmative misconduct on the part of the government." *LaBonte v. United States,* 233 F.3d 1049, 1053 (7th Cir. 2000). Affirmative misconduct means "more than mere negligence. . . . It requires an affirmative act to misrepresent or mislead." *Gibson v. West,* 201 F.3d 990, 994 (7th Cir. 2000).

Equitable tolling is to be applied sparingly, and here there is no plausible argument that it should be applied. In Plaintiff's oversized 55-page brief, he offers a rambling series of vague allegations about mistakes made by the bankruptcy court or statements made by IRS lien unit

3

employees.[3]  What's lacking is any coherent allegation that a government actor made a specific affirmative act designed to mislead.  As in *LaBonte,* the fact that collection and other proceedings were ongoing did not prevent the Plaintiff from filing this action much sooner.  The fact that he apparently assumed these allegations would be handled in other proceedings does not support an equitable tolling argument.

Similarly, the new continuing violation argument does not support the timeliness of Plaintiff's claims.  Drawn from tort law, the continuing violation doctrine sometimes extends a statute of limitations when a violation or injury is ongoing rather than a crystallized and discrete.  Assuming the doctrine could even apply to the government in a tax case, it would not apply here because any wrong done to the Plaintiff was definite and discoverable several years ago.  The fact that the IRS recently reinstated the NFTL by revoking the release does not change that fact.  "[A]bsent a disability or other impediment to suit, the applicable limitation period ordinarily will begin to run when an injured party knows or should know the critical facts related to his claim." *Dziura v. United States,* 168 F.3d 581, 583 (1st Cir. 1999).  As noted earlier, nothing precluded the Plaintiff from bringing suit as early as 2008 or 2009, which makes the filing in 2013 late.  *Wilson v. Giesen,* 956 F.2d 738, 743 (1992) (Continuing violation theory "is not suited to cases such as this, where the harm is definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress.")

Accordingly, I conclude that the government's limited waiver of sovereign immunity under 26 U.S.C. §§ 7432(d)(3) and 7433(d)(3) does not apply here because the claims were not filed

---

[3] Under Civil L.R. 7(f), a memorandum in support of a motion may not exceed 30 pages unless previous leave of court is granted.

4

within the two-year statutory period.[4] The motion to dismiss is therefore **GRANTED**. The motion to amend is **DENIED** because I conclude amendment would be futile.

**SO ORDERED** this   31st   day of July, 2013.

                                        s/ William C. Griesbach
                                        William C. Griesbach, Chief Judge
                                        United States District Court - WIED

---

[4] By not responding to the government's other arguments, Plaintiff has forfeited any other claims.